**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **JOHN E. MARSZALEK,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **No. 06 C 3558** | |
| **v.** | ) | | |
| | ) | **Mag. Judge Michael T. Mason** | |
| **MARSZALEK & MARSZALEK PLAN,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are cross motions for summary judgment filed by plaintiff John

E. Marszalek ("Marszalek" or "plaintiff") and defendant Long Term Disability Insurance

Plan (incorrectly named as the Marszalek & Marszalek Plan, referred to herein as

"defendant" or the "Plan").  Plaintiff seeks disability insurance benefits under the Plan

pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

1132(a)(1)(B).

The parties do not dispute that Marszalek became disabled under the terms of

the Plan on July 23, 2003, and that thereafter Marszalek continued to work on a part-

time basis.   The Plan contends that the administrator, Northwestern Mutual Life

Insurance Company ("Northwestern Mutual"), properly determined Marszalek's disability

benefits based on the net income he received in 2002, and that it was reasonable for

Northwestern Mutual to determine that plaintiff was eligible to receive the Plan's

minimum monthly benefit of $100.  The Plan further contends that Northwestern Mutual

reasonably terminated Marszalek's disability claim based on his failure to provide

updated documentation of his medical condition and income.  In contrast, Marszalek

alleges that the Plan contains inconsistent and irreconcilable methods of calculating his monthly disability benefit. Plaintiff further contends that the Plan contains ambiguous terms which must be resolved in his favor. Marszalek claims that Northwestern Mutual's determination was arbitrary and capricious, and that he is entitled to the maximum benefit of $6,000 per month. For the reasons stated below, the Plan's motion is granted and plaintiff's motion is denied.

## I.    BACKGROUND[1]

Plaintiff is a licensed attorney. At the relevant times, plaintiff practiced law in the same office as his brother, James Marszalek. Plaintiff's brother completed an application for disability insurance under the Plan on May 19, 2000. Northwestern Mutual accepted the application, and coverage under the Plan became effective on June 1, 2000.

The Plan is governed by the: (1) Summary of Insurance issued by Northwestern Mutual with an effective date of June 1, 2000, covering eligible employees and affiliates of the law firm of Marszalek & Marszalek (the "Summary"); and (2) Group Insurance Policy L665000 issued by Northwestern Mutual to Firstar Trust Company, as trustee, with an effective date of October 1, 1996 (the "Policy").[2] The Plan states that:

> The Policy or Summary . . . may be changed in whole or in part. No change in the Policy will be valid unless it is approved in writing by one of the Company's executive officers and given to the Policyowner for attachment to the Policy. No change in the Summary . . . will be valid unless it is approved in writing by one of

---

[1] Unless otherwise noted, these facts are from the parties' Rule 56.1 statements of material facts.

[2] Plaintiff admits that he received copies of the Summary and the Policy, but states he does not know if these documents constitute all of the relevant Plan documents.

the Company's executive officers and given to the Employer.  No agent has authority to change the Policy or the Summary . . . or to waive any of its provisions.

Under the Plan, the term "the Company" refers to Northwestern Mutual.

The Plan provides both total (also known as long term) disability coverage and partial disability coverage.  In order to qualify for long term disability ("LTD") benefits during the initial twenty-four month "Own Occupation" period, a Plan participant must be unable to perform the duties of their Own Occupation.  The Summary states:

You are Disabled from your Own Occupation if, as a result of Sickness, Injury or Pregnancy, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.

The term Own Occupation "[is] not limited to your specific job with your Employer, or to your specific area of specialization, interest or expertise within the general occupation." Plaintiff contends his own occupation is "trial attorney," however the Plan contends his occupation is that of an "attorney."

After benefits have been paid for 24 months, the definition of total disability changes to the "Any Occupation" definition of disability.  Any Occupation is defined as "any gainful occupation for which you are reasonably fitted by education, training, and experience."

The Plan also provides partial disability benefits.  In order to qualify for partial disability benefits during the Own Occupation period, a Plan participant must be working at their Own Occupation "but, as a result of Sickness, Injury or Pregnancy . . . [be] unable to earn more than the Own Occupation Income Level."  Similarly, in order to qualify during the Any Occupation period, the participant must be working in "an occupation but, as a result of Sickness, Injury or Pregnancy . . . [be] unable to earn

more than the Any Occupation Income Level in that occupation and all other occupations for which [the participant is] reasonably suited" by education, training, and experience. The Summary states that a Plan participant will receive LTD benefits if they satisfy the partial disability definition but have no part-time work earnings: "**LTD Benefit**. The LTD Benefit will be paid if you do not have Work Earnings. Your LTD Benefit is shown in the Specifications." The Specifications section is not defined in the Summary. However, the "guide to summary of insurance benefits provisions" identifies the Specifications as starting on page one of the Summary and continuing through page five.

The maximum LTD benefit available under the Plan is 60% of the participant's "Predisability Earnings," not to exceed $6,000 per month. The minimum monthly benefit is $100, reduced by "other income." For sole proprietors, partnerships and S-corporation shareholders, Predisability Earnings is defined as follows:

> Predisability Earnings means your average monthly compensation from your Employer during the Employer's prior tax year. Your average monthly compensation is determined by adding the following amounts as reported on Schedule C, Schedule K-1, Form W-2, or S-Corporation federal income tax return, and dividing by 12:
>
> - Your ordinary income from trade or business;
> - Your guaranteed payments, if you are a partner; and
> - Your compensation (as an officer), salary, and wages if you are an S-corporation shareholder.

The Plan further states that Predisability Earnings for each uninterrupted period of Disability "will be the Predisability Earnings in effect on the date shown in the Specifications. Any change in your earnings after that date will not affect your Predisability Earnings."

Plaintiff contends that the date shown in the Specifications is June 1, 2000 - the Plan's effective date as identified on page one of the Summary.  In contrast, defendant relies on page three of the Summary which states:

**Predisability Earnings:**   Based on your last full day of Active Work

**Earnings Period:**           The preceding 12 calendar months.

Thus, defendant contends that Marszalek's Predisability Earnings are based on 2002, the year preceding his last day of Active Work.

The Summary also notifies Plan participants of their obligation to submit information required to support a claim to "the Company," Northwestern Mutual:

**7.3 Documentation**
At your expense, you must submit completed claims statements, your signed authorization for the Company to obtain information, and any other items the Company may reasonably require in support of your claim.  If you do not provide the documentation within 60 days after the Company mails you a request, your claim may be denied.

Marszalek alleges that on July 23, 2003, his nephrologist placed him on hemodialysis to treat end stage renal disease, and he received hemodialysis three times per week thereafter until November 29, 2004.[3]  Marszalek continued to work on a part-time basis after July 23, 2003.

---

[3] Plaintiff's motion alleges that he has suffered from ankylosing spondylitis since 1969 and that exposure to indocin, a prescription medication used to treat ankylosing spondylitis, caused him to loss approximately 80% of his kidney functions by 1996.  Plaintiff further alleges that his ankylosing spondylitis caused a condition known as heart-block, requiring the implantation of a permanent pace maker in 1998, and caused his entire spine to fuse, leaving plaintiff with permanent restrictions on his mobility.   However, these facts are not set forth in plaintiff's statement of material facts and are not supported by specific references to the record as required by Local Rule 56.1.  Plaintiff's motion also contains additional facts regarding his hemodialysis, kidney transplant, and prescription medications, as well as his treating physician's diagnosis and opinions regarding plaintiff's alleged limitations.  Again, these facts are not set forth in plaintiff's statement of material facts and are not supported by specific references to the record.

On or about August 29, 2003, Marszalek requested a disability claim form.  In September or October of that year, plaintiff completed the claim form, which was received by Northwestern Mutual on October 23, 2003.[4]  Marszalek also authorized Northwestern Mutual, on behalf of the Plan, to obtain medical records to be used to determine his eligibility for disability benefits under the Plan.

On November 4, 2003, a Northwestern Mutual employee reviewed plaintiff's claim and completed a new case worksheet (the "Worksheet").  The Plan contends that Northwestern Mutual prepared the Worksheet based on information supplied by Marszalek in the claim form.  Among other things, the Worksheet states that Marszalek " . . . is TD."  Marszalek claims that this notation evidences Northwestern Mutual's determination that he was totally disabled.  The Plan disputes plaintiff's interpretation of the notation.  The Worksheet also states "PDE = $12,900."  Marszalek claims this establishes that Northwestern Mutual determined that his Predisability Earnings were $12,900.  In contrast, the Plan contends that the notation reflects Marszalek's own report, on his disability claim form, of monthly earnings of $12,900.  The Plan also relies on the comments section of the Worksheet in which the Northwestern Mutual employee states: "Although claimant['s] medical condition appears to meet definition of disability, we do not have sufficient evidence of predisability earnings or current part-time earnings.  I recommend claim remain pending until earnings info is obtained."

---

[4]Marszalek alleges that he mailed the completed application to Northwestern Mutual on September 30, 2003.  The Plan contends that plaintiff signed and dated the group disability claim employee statement on September 30, 2003, and the tax information form on October 18, 2003.  The Plan further contends that Northwestern Mutual did not receive plaintiff's completed application until October 23, 2003.

On November 4, 2003, Northwestern Mutual sent a letter to Marszalek stating that the initial review of his LTD benefits claim was complete, and requesting copies of his 2002 income tax returns. Specifically, the letter states:

> Your group policy defines Predisability Earnings as your average monthly compensation from your employer during the [e]mployer's prior tax year. Your average monthly compensation is determined by adding the following amounts as reported on Schedule C, Schedule K-1, Form W-2, or S-Corporation federal income tax return, and dividing by 12.
>
> In order to determine your Predisability Earnings as a Partner, please provide us with complete copies of your 2002 income tax returns, including all schedules and W-2's.
>
> In order to accurately calculate your disability benefits we must also receive copies of your current part-time earnings documentation.

The Plan contends that on December 4, 2003, Northwestern Mutual received Marszalek's 2002 federal income tax returns. The returns were provided to this Court and are part of the administrative record in this case. In his 2002 IRS Schedule C Profit or Loss from Business, Marszalek reported a gross profit of $123,585, total expenses of $138,969, and a resulting business loss of $15,384. Because Marszalek reported a net loss of $15,384 in 2002, Northwestern Mutual determined that Marszalek did not have any income from his trade or business in the 2002 tax year.

On December 17, 2003, Northwestern Mutual, as administrator, approved Marszalek's application for disability benefits and determined that Marszalek was eligible to receive the $100 minimum monthly disability benefit under the partial disability definition. On that date, Northwestern Mutual mailed plaintiff a letter stating:

> We are writing with regard to your claim for Long Term Disability (LTD) benefits, which has been approved with an initial disability date of July 24, 2003 . . . the first day you were unable to perform the full-time duties of your own occupation, that of Attorney. . . . After careful review of your 2002

tax records, it appears that you did not have an insurable income. As such, we have adjudicated your benefits to reflect a minimum benefit in the amount of $100.

Subsequently, on December 29, 2003, Marszalek returned his disability benefit check and demanded that Northwestern Mutual consider his 1999 income as Predisability Earnings. Marszalek stated that Predisability Earnings are based on the "date show[n] in the Specifications," which he claimed was June 1, 2000. In this same letter, Marszalek asserted that the definition of Predisability Earnings was ambiguous.

Northwestern Mutual responded to Marszalek's letter on January 26, 2004. In its letter of that date, Northwestern Mutual advised Marszalek that it could not rely on his 1999 tax returns because the Specifications section of the Summary expressly provides that Predisability Earnings are based on the participant's last day of Active Work, and not based on the year in which the Summary was issued. The letter further states:

We understand from your letter, dated December 29, 2003, that you would like us to consider your income from 1999 as Predisability Earnings. We are not able to comply with your request as you did not meet the definition of partial disability, as defined in your group policy, until July 23, 2003. As such, your 2002 income must be considered when calculating your Long Term Disability benefits.

Northwestern Mutual also notified Marszalek of his right to request an administrative appeal of the benefit determination. Thereafter, Northwestern Mutual, on behalf of the Plan, tendered payment to plaintiff in the amount of $100 per month. Marszalek refused tender.

On February 5, 2004, Marszalek submitted a request for an administrative appeal. Defendant alleges that during the administrative appeal, Northwestern Mutual discovered that the Policy was issued to the law partnership of Marszalek & Marszalek, but the federal employer identification number provided during the application process

8

was for an entity named "James J. Marszalek, PC." The Plan further alleges that plaintiff held his law firm, Marszalek & Marszalek, out as a partnership at various times, but filed his 2002 tax returns as a sole proprietor. By letter dated May 6, 2004, Northwestern Mutual informed plaintiff's brother, James Marszalek, of these issues. On September 23, 2004, James Marszalek submitted a request to change the name of the insured from Marszalek & Marszalek to James J Marszalek, P.C. Subsequently, in a letter dated May 20, 2005, Northwestern Mutual informed Marszalek that the name of the insured group had been changed from Marszalek & Marszalek to James J. Marszalek, PC. Consistent with that change, Northwestern Mutual notified plaintiff of the decision to manage his claim "as if your sole proprietorship had been added as an affiliate (otherwise you would not receive even the minimum benefit)."

On appeal, Northwestern Mutual determined that Marszalek's Predisability Earnings were properly calculated based on his income in 2002, the calendar year preceding Marszalek's last day of Active Work. Northwestern Mutual also determined that it properly calculated Marszalek's Predisability Earnings based on his reported net income, rather than his reported gross income, as reflected in Marszalek's 2002 Schedule C. Marszalek received notice of Northwestern Mutual's decision in the August 31, 2004 determination letter. The letter states, in part, that:

> ... the Specifications section does not state that June 1, 2000, the contract effective date, is the date utilized in determining your Predisability Earnings. Rather, the Specification[s] section clearly states, "**Predisability Earnings:** Based on your last full day of Active Work." Therefore, as you have claimed an inability to work full time as of July 23, 2003, your Predisability Earnings should be based on your 2002 tax year.
>
> Information in your file as documented by your 2002 income tax returns supports that you have not received any income from Marszalek and Marszalek for the

2002 tax year.  Therefore, it was correct to determine that you were eligible for the $100.00 minimum benefit.

We do not find that it would be accurate to utilize your gross income rather than your net income, as you did not receive the gross income listed on your tax returns.  Although your tax return, form 1040, does not refer to "ordinary income," we find that it is reasonable to conclude that this is in reference to your net profit or loss.[5]

Northwestern Mutual also notified Marszalek that he had exhausted his administrative remedies under the Plan.

On September 30, 2004, Marszalek's attorney inquired as to whether Northwestern Mutual's benefit determination was final.  The attorney enclosed a letter from Marshall Wilson Reavis III ("Reavis") dated September 16, 2004 (the "Reavis Letter").  Plaintiff contends that Reavis is a qualified expert witness in the field of insurance.  Plaintiff retained Reavis to review the Summary and the Policy.

In his letter, Reavis offers his professional opinion that the Plan documents are "conflicting" and "filled with ambiguities."  Consequently, Reavis concludes that a "self-serving insurance company" determined "to offer only the minimum benefit of $100 a month which violates the good faith and fair dealing inherent in an insurance transaction."  Reavis further opines that the phrase Predisability Earnings "is certainly not clear" and therefore Marszalek's "ordinary income" should be calculated based on gross income, rather than net income.  By letter dated October 29, 2004, Northwestern Mutual declined Marszalek's request for a second administrative appeal and advised Marszalek that the information in Reavis' letter did not change the original benefit

---

[5]Marszalek disputes the contents of this letter "especially the assertion that Plaintiff 'did not receive the gross income listed on your tax returns.'"

determination.

Marszalek received a kidney transplant from a non-related cadaver on November 29, 2004. Thereafter, on March 1, 2005, Northwestern Mutual notified Marszalek that it required updated medical information regarding his disability claim and requested that his treating physician complete a medical questionnaire. One of Marszalek's physicians, Nancy Dolan, M.D., completed the questionnaire on April 14, 2005.

On July 12, 2005, Northwestern Mutual determined that Marszalek had not cashed his disability benefit checks for the period from September 2004 to December 2004. After further investigation, on September 15, 2005, Northwestern Mutual informed Marszalek that it had discovered that he had not cashed any of his disability benefit checks during the period from December 2003 to December 2004. Northwestern Mutual requested that Marszalek confirm in writing whether he planned to cash the checks, and informed him that his claim had been suspended pending a response. Northwestern Mutual also requested that Marszalek submit his 2003 and 2004 business and personal federal income tax returns. The Plan contends that Northwestern Mutual subsequently determined that Marszalek had not cashed any checks during the period from September 2004 to September 2005. Regardless of the actual date of discovery, it is undisputed that plaintiff did not cash any of his LTD benefit checks.

On October 19, 2005, Northwestern Mutual requested that Marszalek confirm, in writing, his intentions with regard to the benefits and informed him that his "claim is currently suspended pending your response, which has not been received in our office." In that same letter, Northwestern Mutual noted that "[i]nformation on the Medical

Questionnaire completed by Dr. Dolan on April 14, 2005 indicated that your next visit was November 17, 2005." Northwestern Mutual requested that Dr. Dolan complete and return an enclosed medical form. Finally, Northwestern Mutual informed Marszalek that his disability claim would be closed if he failed to submit his outstanding 2003 and 2004 tax returns and the completed, updated medical questionnaire by December 18, 2005.[6]

Marszalek did not provide the requested materials by December 18, 2005. Rather, he informed Northwestern Mutual, in a letter dated October 25, 2005, that he would not comply with the requests until he received $6,000 per month:

> [Y]our company is in breach of the insurance contract. When your company starts abiding by its obligations under the contract, I will consider your requests. Your company cannot expect me to continue providing you with documentation for my claim while your company continues to ignore the plain language of the agreement.

On January 18, 2006, Northwestern Mutual informed Marszalek of its decision to close his claim for failure to comply with numerous requests for information. Although plaintiff disputes the statements contained in the letter, the document states:

> The group LTD policy for Marszalek & Marszalek states that you must give Northwestern Mutual satisfactory written proof that you continue to be disabled and entitled to benefits. Documentation must be provided at your own expense and you must submit requested information within 60 days after the Company mails you a request for such information or your claim may be closed . . .
>
> Since more than 60 days have pas[sed] since our original requests for current medical documentation and tax returns for 2003/2004, and the information has

---

[6]Plaintiff acknowledges that he received this letter and the related correspondence from Northwestern Mutual discussed herein. However, Marszalek contends that Northwestern Mutual's requests for further information were disingenuous. It is plaintiff's position that: "Defendant had in its possession an authorization signed by Plaintiff on September 30, 2003 authorizing Defendant to obtain records or knowledge of Plaintiff from 'Any government agency, including the Social Security Administration.' Therefore Defendant could have requested Plaintiff's federal income tax returns from the Internal Revenue Service whenever it wished, had the true purpose of Defendant's October [19], 2005 letter been to obtain relevant information."

not been received, we are closing your claim with benefits paid through January
13, 2006.

The letter further informed Marszalek of his right to request a review of the decision and

to submit additional information.

On January 31, 2006, Marszalek submitted a letter requesting an administrative

appeal.  Specifically, plaintiff asked Northwestern Mutual to:

review your decision to close my claim.  Please have the claim reviewed by
someone who is not biased and who is not affiliated with your company.  Also, I
would like to participate in the selection of the reviewer.  If a physician is
consulted, please consult a board certified rheumatologist and a board certified
nephrologist, not an unemployed doctor who cannot find a job practicing
medicine.

Marszalek also requested that Northwestern Mutual reissue the benefit checks in the

correct amount of $6,000 per month.

On March 22, 2006, Northwestern Mutual declined to re-review its determination

of Marszalek's Predisability Earnings and provided Marszalek with an additional thirty

days to submit updated medical documentation and his 2003 and 2004 tax returns.

Marszalek denies that the requests for additional information were genuine, but rather

claims that they were mere pretense and an excuse to close his claim.  Accordingly, in a

letter dated March 28, 2006, Marszalek requested that Northwestern Mutual explain

why it continued to "ignore the policy language defining predisability earnings."

Marszalek also demanded that Northwestern Mutual pay 34 months of benefits at

$6,000 per month, or $204,000.  By letter dated June 1, 2006, Northwestern Mutual

notified Marszalek that he had exhausted his administrative remedies on August 31,

2004 with respect to the determination of Predisability Earnings and that his claim was

closed for failure to provide updated medical documentation and 2003 and 2004 federal

income tax returns.

## II.    STANDARD OF REVIEW

### A.    Standard for Summary Judgment

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To avoid summary judgment, the nonmovant must advance "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to determine if genuine issues of fact exist in cross motions for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the party against whom the motion under consideration is made. *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004). The mere existence of a factual dispute is not sufficient to defeat a summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Instead, the nonmoving party must present definite, competent evidence to rebut the movant's summary judgment motion. *Id.*

### B.    Standard Under ERISA

Under ERISA, judicial review of a plan administrator's decision is *de novo* unless the plan gives the administrator discretion to construe policy terms. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989); *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005). Where a plan gives the administrator discretionary authority, the court reviews the decision under the arbitrary and capricious standard of review. *Hackett v. Xerox Corp. Long Term Disability Income*

14

*Plan*, 315 F.3d 771, 773 (7th Cir. 2003). Under this deferential standard, the court "will not set aside a denial of benefits based on any reasonable interpretation of the plan." *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (internal quotations omitted).

This Court previously ruled that the arbitrary and capricious standard is the appropriate standard of review in this case. *Marszalek v. Marszalek & Marszalek Plan*, 485 F. Supp. 2d 935, 938 (N.D. Ill. 2007) ("[T]he plan documents clearly establish that the administrator has discretionary authority.") Under this standard, Marszalek must submit evidence demonstrating that Northwestern Mutual's benefit determination was arbitrary and capricious. *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990). Plaintiff asks this Court to vacate our prior decision and apply the *de novo* standard of review. Plaintiff argues that the appropriate standard of review should be *de novo* because the Plan does not "clearly and unequivocally" delegate discretion from Northwestern Mutual back to the Plan.[7] In support, plaintiff relies on the district court's decision in *Skibbe v. Metropolitan Life Ins. Co.*, No. 05 C 3658, 2007 U.S. Dist. LEXIS 71300 (N.D. Ill. Sept. 24, 2007). Even if reconsideration of the standard of review were properly before us, the holding in *Skibbe* does not support the plaintiff's request.

*Skibbe* holds that "if a plan must 'clearly and unequivocally' grant discretionary authority to the plan administrator, then it is logical that it must 'clearly and

---

[7]Plaintiff also argues that the terms arbitrary and capricious are redundant because both are defined in Black's Law Dictionary as "without fair, solid and substantial cause." Relying on this definition, plaintiff asks this Court to find that Northwestern Mutual's benefit determination was without fair, solid and substantial cause. However, this Court looks to governing case law to determine the standard of review.

15

unequivocally' delegate the plan administrator's discretionary authority to its fiduciaries or third parties and an implied delegation will not suffice."  2007 U.S. Dist. LEXIS 71300, *27.  Here, the Plan expressly delegates discretionary authority to the administrator, Northwestern Mutual.  Unlike the *Skibbe* plan, Northwestern Mutual did not attempt to delegate its authority to a third party.  *See id.* at 28.  Moreover, contrary to plaintiff's interpretation, *Skibbe* does not hold that Northwestern Mutual was somehow required to "clearly and unequivocally" delegate its discretionary authority under the Plan back to the Plan after Northwestern Mutual was dismissed from this case.  *See id.; see also Sanders v. UNUM Life Ins. Co. of Am.*, 346 F. Supp. 2d 955, 957 (N.D. Ill. 2004) (rejecting argument that a plan sponsor must reserve discretion for itself before delegating discretion to a claims administrator).  Plaintiff's request to vacate our prior decision holding that the arbitrary and capricious standard of review applies is therefore denied.

We now turn to defendant's motion for summary judgment.

## III.  ARGUMENT

The Plan claims it is entitled to summary judgment because the administrator, Northwestern Mutual, reasonably interpreted the Plan terms and found plaintiff's Predisability Earnings were based on his "last full day of Active Work."  Marszalek became disabled on July 23, 2003.  Because Marszalek reported a business loss in 2002, the Plan contends Northwestern Mutual properly determined that Marszalek was eligible to receive the Plan's minimum monthly benefit.  Plaintiff disputes Northwestern Mutual's interpretation of the Plan terms and calculation of his disability benefits.

### A.     The Definition of Predisability Earnings

16

The Plan informs participants that "Predisability Earnings for each uninterrupted period of Disability will be the Predisability Earnings in effect on the date shown in the Specifications." Plaintiff contends that the Plan's reference to "the date shown in the Specifications" is ambiguous. We agree. A number of dates are identified in the Specifications. For example, the Specifications shows a Policy effective date of October 1, 1996; an employer effective date of June 1, 2000; a beginning date of the "91st day of Disability in the first 120 days after the date you become Disabled;" and a premium dues date of "[t]he effective date of your Employer's participation under the Policy and the first day of each calendar month thereafter." Language is ambiguous "if it is subject to more than one reasonable interpretation." *Shaltiel v. Fortis Ins. Co.*, 345 F. Supp. 2d 912, 915 (N.D. Ill 2004) (internal citations omitted). The phrase "date shown in the Specifications" clearly meets this test.

Marszalek contends that this, and all other alleged ambiguities in the Plan, should be resolved in his favor under the common law doctrine of *contra proferentem* and the Seventh Circuit's holding in *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir. 1992). The *Phillips* court held that "[a]mbiguous terms in an insurance contract will be strictly construed in favor of the insured." However, *Phillips* involved the interpretation of an ERISA plan under a *de novo* standard of review. 978 F.2d at 307. Cases reviewing ERISA plans *de novo* or applying general contract law are not applicable to the present case. Where, as here, a plan gives the administrator discretion to interpret it, "we cannot merely apply federal common law principles of contract interpretation, but must view the contractual ambiguity through a lens that gives broad discretion to the plan administrator to interpret the plan." *Hess*, 423 F.3d at 662,

17

*quoting Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 833 (7th Cir. 2004).

Accordingly, under the arbitrary and capricious standard of review, the doctrine of *contra proferentem* does not guide our analysis. *See Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1011 (7th Cir. 1998) ("Although, generally, ambiguities in an insurance policy are construed in favor of an insured, in the ERISA context in which a plan administrator has been empowered to interpret the terms of the plan, this rule does not obtain") (internal citations omitted). Therefore, even though we find the phrase "date shown in the Specifications" ambiguous, it need not be construed in favor of Marszalek. *See id.*

The issue before us is not whether Northwestern Mutual could have interpreted Predisability Earnings in another way, but whether its interpretation was unreasonable. *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998) (stating that under the arbitrary and capricious standard of review "it is not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority.") Defendant claims that Northwestern Mutual properly exercised its discretion and concluded that the reference to "the date shown in the Specifications" referred to Marszalek's last full day of Active Work, and not the Plan's effective date, the employer effective date, the premium due dates, or any other date shown in the Specifications. Defendant further argues that Predisability Earnings must be defined in the context of other Plan provisions. We agree. *See Brewer v. Protexall*, 50 F.3d 453, 458 (7th Cir. 1995) (finding the term "comparable" ambiguous because it "is subject to more than one reasonable interpretation and because it is not clarified in the plan itself.") Defendant relies on the Specifications

18

section of the Summary which states: "**Predisability Earnings**: Based on your last full day of Active Work." (emphasis in original). Active Work is defined as "performing the Material Duties of your Own Occupation at your Employer's usual place(s) of Business." The Specifications section further states that for purposes of calculating Predisability Earnings, the Earnings Period is the "preceding 12 calendar months." We find that Northwestern Mutual reasonably relied on these provisions in determining Marszalek's Predisability Earnings. *See Hess,* 423 F.3d at 662.

Defendant further claims that Northwestern Mutual's determination is consistent with the Plan's purpose of replacing a portion of the income that an insured loses due to disability. This argument is persuasive. If, as plaintiff claims, Predisability Earnings were determined based on his 1999 income - the year preceding the Plan's effective date - then the Plan could not account for any increase or decrease in his income. Accordingly, we cannot find that Northwestern Mutual's determination was unreasonable. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) ("When as in this case the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests him with discretion to interpret it, will ordinarily bind the court. That is implicit in the idea of deferential review of the plan administrator's interpretation.")

### B.     The Plan's Calculation of Ordinary Income

Under the Plan, a participant's Predisability Earnings are calculated based on their "ordinary income" from the prior tax year as reported on Schedule C, Schedule K-1, Form W-2, or S-Corporation federal income tax return. However, the term ordinary income is not defined. Plaintiff claims that the term is "intentionally ambiguous" and this

ambiguity must be resolved in his favor.  We reject this argument for the same reasons discussed above.  *See, e.g., Hess*, 423 F.3d at 662.  Plaintiff further argues that defendant's motion should be denied because defendant failed to consult with an expert or offer any expert testimony to support its interpretation of the Plan terms.  Because our review of this case is limited to the administrative record, it would be inappropriate for either party to seek to introduce expert testimony to support their preferred interpretation of the Plan.  *See, e.g., Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir 2004), *cert denied*, 543 U.S. 1021.  We therefore reject plaintiff's request that we look beyond the administrative record.

Marszalek's 2002 Schedule C identifies gross income of $123,585, total expenses of $138,969, and a net loss of $15,384.  Northwestern Mutual concluded that Marszalek's ordinary income was the net loss reported in his Schedule C filing and therefore Marszalek was entitled to the minimum monthly benefit of $100 per month. Defendant claims Northwestern Mutual's interpretation is reasonable because it is consistent with the meaning of the term "ordinary income" as utilized by the IRS.  We agree.  Plaintiff's tax return, Form 1040 Schedule C, does not refer to "ordinary income." Rather, it identifies the "Net profit or (loss)."  However, other tax forms referenced in the Sole Proprietors, Partners and S-Corporation section of the Summary include a specific line entitled "Ordinary income (loss) from trade or business activities."  This line is used for reporting either net income or net loss for the partner or S-corporation shareholder.

Defendant further claims that if a participant's ordinary income were based on gross income, the Plan would be converted into a form of business loss insurance and

Plan coverage would create a financial incentive for Plan participants to stop working. This argument is also persuasive. Because Northwestern Mutual's interpretation of "ordinary income" is reasonable and consistent with relevant Plan provisions, we will not set aside the determination that Marszalek was entitled to the minimum monthly benefit. *See Dabertin*, 373 F.3d at 828.

### C.    The Reavis Affidavit Does Not Preclude Summary Judgment

In support of his opposition to defendant's motion, Marszalek submitted the Affidavit of Marshall W. Reavis III (the "Reavis Affidavit"). Marszalek claims that the Reavis Affidavit creates a genuine issue of fact which mandates the denial of defendant's motion.

As an initial matter, we note that the Reavis Affidavit is not part of the administrative record, and therefore is not properly before this Court. *See Perlman v. Swiss Bank Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999). Plaintiff avers that the Reavis Affidavit contains the same facts and opinions as the September 16, 2004 Reavis Letter included in the administrative record. While there are minor differences between the documents, both contain Reavis' interpretation of Plan terms, including Predisability Earnings and ordinary income; opinion that the Plan is confusing and ambiguous; and conclusion that Marszalek's ordinary income should be his gross income.

Plaintiff claims that Reavis' opinions establish that plaintiff is capable of meeting his burden of proof at trial. To support this proposition, Marszalek relies on the Ninth Circuit's decision in *Provenz v. Miller* stating that "[a]s a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's

case." 102 F.3d 1478, 1490 (9th Circuit 1996). This case is not persuasive. *Provenz* involved the *de novo* review of summary judgment entered in favor of a defendant on plaintiff's claims under §10(b) of the Securities Act. *Id.* at 1482-83. The present case requires us to apply the more deferential standard of review.

It is well established that under the arbitrary and capricious standard, a reviewing court will not "attempt to make a determination between competing expert opinions . . . . an 'insurer's decision prevails if it has rational support in the record.'" *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006), *quoting Leipzig v. AIG Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004). Accordingly, we find that Reavis' interpretation of the Plan does not create a question of fact precluding the grant of summary judgment in favor of defendant. *See Semien,* 436 F.3d at 813 ("Engaging in the type of in-depth review [plaintiff] advocates not only runs contrary to statutory intent, but would tax the judicial resources of the district courts and magistrate judges beyond the breaking point."); *Hess*, 423 F.3d at 662 (rejecting affidavit interpreting plan terms from former plan administrator).

### D.     This Court's Review is Limited to the Administrative Record

Plaintiff further claims that defendant's motion must be denied because it is not supported by any depositions, answers to interrogatories, admissions or affidavits as required by Fed. R. Civ. P. 56, but only "the so-called administrative record, which consists of hearsay entirely." The Seventh Circuit has repeatedly held that under the arbitrary and capricious standard, our review of the plan administrator's decision is limited to the evidence or information contained in the administrative record. *See, e.g. Vallone.*, 375 F.3d at 629; *Hess v. Hartford Life & Accident Ins. Co*, 274 F.3d 456, 462

22

(7th Cir. 2001). In fact, if defendant had attempted to introduce evidence outside of the administrative record to support Northwestern Mutual's benefit determination, it would not be considered by this Court. *See Perlman*, 195 F.3d at 982 ("We have allowed parties to take discovery and present new evidence in ERISA cases subject to *de novo* judicial decisions, but never where the question is supported by substantial evidence or is arbitrary and capricious.") *See also Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 490 (7th Cir. 2007) (explaining that even where the review of an administrator's decision is *de novo*, the court has the discretion to limit the evidence to the record before the plan administrator). Accordingly, defendant's reliance on the administrative record is entirely proper.

### E. Marszalek Qualified for Partial Disability Benefits

Plaintiff claims that Northwestern Mutual's determination that he qualified for partial disability benefits was arbitrary and capricious because defining partial disability "is as difficult as calculating the square root of pi" and "at no time during the claim or review process did Defendant advise Plaintiff that he was being paid benefits because he was only partially disabled." In the alternative, Marszalek claims that a notation made on the November 4, 2003 Worksheet by a Northwestern Mutual employee stating that plaintiff ". . . is TD" is an admission that defendant believed plaintiff was totally disabled.

Partial disability is defined in the Plan. The Plan states that a participant qualifies for partial disability where the participant is working but, as a result of sickness or injury, is unable to earn more than their Own Occupation (or, after benefits have been paid for 24 months Any Occupation) income level. The Worksheet does not amend this term.

To the contrary, the Plan requires that any amendment be "approved in writing by one of [Northwestern Mutual's] executive officers and given to the Policyowner for attachment to the Policy." Moreover, the documentation provided to Northwestern Mutual during the claim review process showed that plaintiff continued to work after July 23, 2003. In fact, plaintiff's response in opposition to the Plan's motion acknowledges that he "went to his office a few hours per day while receiving kidney dialysis." Accordingly, Northwestern Mutual's determination that the partial disability provision applied was not arbitrary and capricious.

### F.    The Termination of Plaintiff's Claim

Finally, defendant argues that Northwestern Mutual properly exercised its discretionary authority by terminating Marszalek's claim due to his failure to submit his 2003 and 2004 tax returns and updated answers to the medical questionnaire.

It is undisputed that Marszalek initially complied with Northwestern Mutual's request for documentation. On or around March 1, 2005, Northwestern Mutual requested that Marszalek's treating physician complete a medical questionnaire. One of his physicians, Nancy Dolan, M.D., completed the questionnaire on April 14, 2005, and the questionnaire was returned to Northwestern Mutual sometime thereafter. However, after that date Marszalek elected not to respond to Northwestern Mutual's request for further information. Marszalek informed Northwestern Mutual that he was withholding the requested documentation because the administrator "breached its contract . . . by not paying . . . the correct amount of benefits."

While this Court is sympathetic to Marszalek's plight, his continued disagreement with Northwestern Mutual's benefit determination does not excuse his

refusal to comply with the obligation to provide updated medical documentation and copies of his 2003 and 2004 federal income tax returns. The Summary notifies Plan participants of their obligation to submit, at their own expense, "completed claim statements ... and any other items [Northwestern Mutual] may reasonably require" in support of a claim. The Summary further notifies participants that failure to provide requested documentation within 60 days may result in the denial of a claim. It was not unreasonable for Northwestern Mutual to rely on this language.

Perhaps seeking to circumvent the documentation requirement, plaintiff contends that the requests for additional information were mere pretense, and an excuse to close his claim. In support, plaintiff cites the signed authorization which allowed Northwestern Mutual to obtain "any records or knowledge" from "[a]ny government agency." Contrary to plaintiff's allegations, the existence of the written authorization does not establish that the "true purpose" of the requests for additional information was anything other than obtaining the documentation required to support Marszalek's continued claim for benefits.

The Plan notifies participants that failure to provide documentation within 60 days of a request may result in the denial of a claim. Northwestern Mutual notified plaintiff on at least four occasions, beginning on September 15, 2005, of the need for additional documentation. Given Marszalek's failure to provide the requested documentation, we cannot conclude that Northwestern Mutual's decision to terminate his claim was arbitrary and capricious.

**G.    Plaintiff's Motion for Summary Judgment**

In addition to the allegations discussed above, plaintiff advances a number of

additional arguments in support of his motion for summary judgment. Chief among them is plaintiff's claim that defendant ignored important evidence that plaintiff was a sole proprietor. In support, plaintiff claims that Northwestern Mutual failed to contact Austin Wyman, the agent who met with plaintiff and his brother to discuss the purchase of disability insurance, and Geoff Yokum, an underwriter who allegedly spoke with Mr. Wyman. Whether or not Mr. Wyman and Mr. Yokum knew, as plaintiff claims, that he was a sole proprietor is simply not relevant. Northwestern Mutual acknowledged that Marszalek was a sole proprietor and informed Marszalek that it was managing his claim "as if [his] sole proprietorship had been added as an affiliate." Northwestern Mutual did not, as plaintiff claims, decide that Marszalek had no Predisability Earnings because he was not a partner. Rather, Northwestern Mutual administered Marszalek's claim and calculated his monthly disability benefits pursuant to the provisions applicable to sole proprietors.

Next, plaintiff claims that the Plan "overlooked the significance of Plaintiff's income tax returns from 1999, and seriously erred in failing to appreciate the significance of those returns." It was not arbitrary and capricious for Northwestern Mutual to determine that plaintiff's 1999 tax returns were not relevant to the calculation of his monthly benefit. As discussed above, Northwestern Mutual reasonably determined that plaintiff's Predisability Earnings should be based on his 2002 net income. Marszalek's 1999 tax returns would only be relevant if Northwestern Mutual had found that benefits were determined based on the date the Summary was issued.

Plaintiff further claims that Northwestern Mutual misrepresented the Plan language by notifying him in a letter dated January 26, 2004, that Predisability Earnings

were those "in effect on the date shown in the Specifications [the last full day of work]." Plaintiff correctly notes that the clause in brackets does not immediately follow the phrase "date shown in the Specifications." However, the bracketed clause is found in the Specifications. "**Predisability Earnings:** Based on your last full day of Active Work." Therefore, this argument is equally unpersuasive.

IV.     **CONCLUSION**

For the reasons set forth above, the Plan's motion for summary judgment is granted and Marszalek's motion for summary judgment is denied. It is so ordered.

**ENTERED:**

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**DATED:  June 30, 2008**